NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSEPH ARUANNO, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 08-305 (JLL) |
| ANDREW BOOKER, PAUL LAGANA, GEORGE HAYMAN, CAPRICE CHAVERS, MERRILL MAIN, and KEVIN RYAN, | : OPINION |
| Defendants. | : |

**LINARES**, District Judge.

Plaintiff Joseph Aruanno ("Plaintiff" or "Aruanno") brings the present action against Defendants Paul Lagana ("Lagana"), George Hayman ("Hayman"), Caprice Chavers ("Chavers") (collectively, "DOC Defendants"), Merrill Main ("Main") and Kevin Ryan ("Ryan") (collectively, "DHS Defendants"), and Andrew Booker ("Booker") pursuant to 42 U.S.C. § 1983. The DHS Defendants and DOC Defendants now move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.[1] The Court has reviewed the parties' submissions and decides the instant motion without oral argument, pursuant to Fed. R. Civ. P. 78. For the reasons set forth in this opinion, the motion is

---

[1] Defendant Booker was served on September on September 24, 2008. He asked for and received an extension to answer on October 15, 2008. Recently, on November 10, 2008, Plaintiff moved for default against Defendant Booker because Booker has as of yet failed to file an answer. Thus, Defendant Booker is not a part of the present motion and the Court's references to "Defendants" throughout the opinion includes all named defendants *except for* Mr. Booker.

granted.[2]

**I.     Background**

    **A.     Procedural History**

On January 25, 2008, this Court granted Plaintiff Joseph Aruanno's ("Plaintiff" or "Aruanno") Application to file a Complaint and proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Docket Entry No. 2.)  In that Order, the Court construed Plaintiff's Complaint as having asserted the following claims: (1) a claim that Defendants Booker, Chavers, Hayman, Main, and Ryan deprived Plaintiff of liberty without due process in violation of the Fourteenth Amendment; and (2) a claim that defendants Lagana and Hayman failed to supervise and train personnel under their supervision, resulting in the deprivation of liberty without due process.  (Id.)

After several extensions of time to file an answer, Defendants filed the present motion to dismiss (or in the alternative motion for summary judgment) on May 16, 2008.  Plaintiff filed opposition on August 20, 2008.  Plaintiff also asked for *pro bono* counsel on April 14, 2008, and on May 12, 2008, and both requests were denied by Magistrate Judge Cecchi on August 12, 2008. (Docket Entry Nos. 14, 22, 30.)  Finally, on Nov. 13, 2008, this Court denied Plaintiff's appeal of Magistrate Judge Cecchi's decision and affirmed the August 12, 2008 Order.  (Docket Entry Nos. 39, 40.)

    **B.     Factual History**[3]

Taking the allegations in the complaint to be true, the facts are as follows:  Plaintiff is

---

[2] Jurisdiction is premised on 28 U.S.C. § 1331 as this case is brought under 42 U.S.C. §1983.

[3] The facts below are culled from Plaintiff's Complaint.  Because the Court declines to convert the motion into one for summary judgment, *see* Section II *infra,* the statement of facts does not include reference to Defendants' statement of undisputed facts submitted in conjunction with their motion to dismiss.

civilly committed to the Special Treatment Unit in Kearny, New Jersey, pursuant to the New Jersey Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24 et seq. On November 27, 2006, Plaintiff had a meeting with Defendant Lagana and pointed out a criminal complaint submitted to the US Attorney's office in Newark, New Jersey, regarding "retaliation and obstructionist behavior" being undertaken by Defendant Booker.[4] (Compl. at 1.) Additionally, Plaintiff discussed with Lagana the issue of property that had been stolen from him by DOC staff. (Id.) The next morning, on November 28, 2006, Defendant Booker assaulted Plaintiff in his cell and threatened to punch and kill him if he told anyone about it. (Id.) After reporting the assault, Plaintiff was "placed in lock-up for 3 months" where he "was harmed on a daily basis mentally and physically..." (Id.)

During his three-month period in lockup, Plaintiff spoke to Defendant Chavers of the Special Investigation Division. (Id.) No action was taken with regard to his complaint. (Id.) Chavers allegedly told Plaintiff that she could not proceed with the complaint in the absence of witnesses, to which Defendant replied that he would not provide names of witness unless and until Chavers could "assure their safety." (Id.) Eventually, Plaintiff alleges that Defendant Booker was fired "for sexually harassing staff." (Id.)

Finally, Plaintiff alleges that he advised Defendants Lagana, Chavers, Hayman, Main, and Ryan of certain "atrocities" and that none of these individuals took action. (Id. at 2.) Moreover, Lagana and Hayman failed to supervise and train their staff. And Main and Hayman allowed "these atrocities to continue." (Id.)

---

[4] Plaintiff's Complaint is not structured in paragraph form. Thus, the Court cites to the page number of the Complaint.

**II.     Legal Standard**

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.[5]  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).  However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.  See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although the proscriptions of Rule 8 apply to all plaintiffs, when a plaintiff is proceeding pro se, the court must construe the complaint liberally.  Altson v. Parker, 363 F.3d 229, 233-34 (3d Cir. 2004); U.S. v. Miller, 197 F.3d 644, 648 (3d Cir. 1999) (recognizing the courts' "time-honored practice of construing pro se plaintiffs' pleadings liberally").  Moreover, given the disparity in legal sophistication, the court will hold a complaint submitted by a pro se plaintiff to a less exacting standard than one submitted by trained counsel.  See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007); Haines v. Kerner, 404 U.S. 519 (1972).

Defendants seek summary judgment in the alternative and have submitted a host of

---

[5] In doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

exhibits, reports, and records in support.  The Court can consider matters outside of the pleadings so long as it gives proper notice to the opposing party of its intent to convert the motion into one for summary judgment.  In re Bayside Prison Litig., 190 F. Supp. 2d 755, 760 (D.N.J. 2002).  By giving notice, the Court guards against "summary judgment by ambush."  Id. (internal citations omitted.)  In this case, the Court has not given clear notice to the Plaintiff of an intent to convert the motion to one for summary judgment.

Moreover, because Defendants filed the present motion in lieu of an answer, no discovery has yet taken place.  The lack of discovery also counsels against conversion.  Harvey v. Brown, No. 06-1891, 2007 WL 2893193 at *3 (D.N.J. Sept. 28, 2007) (declining to convert motion into one for summary judgment where Plaintiff was proceeding *pro se*, no discovery had taken place, and Court had not provided notice of an intent to convert); Sindram v. Fox, No. 07-0222, 2007 WL 3225995 at *1 (E.D.Pa. Oct. 31, 2007 (noting risk of conversion where "plaintiff is a *pro se* litigant and discovery is needed to flesh out plaintiff's claims.")

Finally, "[t]he decision to convert a motion to dismiss into a summary judgment motion is entrusted to the district court's discretion."  Thomas v. Aetna, Inc., No. 98-2552, 1999 WL 1425366 at *2 (D.N.J. June 8, 1999).  Here, the Court follows the lead of the Harvey and Sindram courts and decides against converting the present motion into one for summary judgment.  Given that the plaintiff is proceeding *pro se* and that no discovery has yet taken place, the Court looks only to the face of the complaint and evaluates the present motion under Fed. R. Civ. P. 12(b)(6).

**III.    Discussion**

    **A.    Qualified Immunity**

DHS Defendants move to dismiss the Complaint based upon qualified immunity. Qualified immunity shields state officials performing discretionary functions from suit for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 296 (1982)). Qualified immunity is not simply a defense to liability; it is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Accordingly, the Supreme Court has emphasized the need to resolve questions of qualified immunity as early in the proceedings as possible. Saucier v. Katz, 533 U.S. 194, 200 (2001). A qualified immunity analysis involves a two-step process. First, the court must ask whether "the facts alleged, [when] viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts, as alleged, demonstrate a constitutional violation, then the Court must ask whether the right asserted was "clearly established." Saucier, 533 U.S. at 201.

    The qualified immunity inquiry overlaps neatly with the elements required to establish a violation of Section 1983. Section 1983 states in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

>party injured in an action at law, suit in equity, or other proper proceeding for redress
>. . . .

42 U.S.C. § 1983. To establish a violation of section 1983, Plaintiff must establish (1) that he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed under color of state law. See, e.g., 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); D'Aurizio v. Palisades Park, 963 F.Supp. 378, 383 (D.N.J. 1997). Thus, Section 1983 is not a source of substantive rights, but provides a vehicle for vindicating the violation of other federal rights. See, e.g., Graham v. Connor, 490 U.S. 386, 393-94 (1989). As such, the Court delves immediately into the first, and overlapping factor, of the Section 1983 and qualified immunity inquiries – whether or not Plaintiff has adequately alleged the violation of a constitutional right.

Aruanno's Complaint only makes slight reference to the DHS Defendants, as follows: "I also name DHS Commissioner Ryan and his Director M. Main because not only do they allow DOC to violate us in these ways which denies us [sic] a therapeutic environment but I had informed both Ryan and Main of what is going on here to the other residents as well as myself but they allow these atrocities to continue." (Compl. at 2.) As noted earlier, when granting Plaintiff's application to proceed *in forma pauperis*, this Court construed the Complaint as setting forth an allegation against all Defendants, including Main and Ryan, of depriving Plaintiff of liberty without due process. Thus, the initial inquiry must focus on whether Plaintiff has set forth a viable due process claim for failure to protect against the DHS Defendants.

An allegation of failure to protect is evaluated under the Fourteenth Amendment for pre-trial detainees and under the Eighth amendment for convicted prisoners. Under either analysis,

the standard is the same – a defendant violates a Plaintiff's constitutional rights if he or she is deliberately indifferent to Plaintiff's rights. A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 583 (3d Cir. 2004). "Deliberate indifference" is a subjective standard in which the official knew of a "substantial risk of serious harm" and disregarded the risk by "failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 834 (1994). "To be liable on a deliberate indifference claim, a defendant prison official must both know of and disregard an excessive risk to inmate health or safety. The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

Here, Aruanno fails to specify what he means by "these atrocities" or what he is referring to when he alleges that the DHS Defendants allow DOC to violate the prisoners in "these ways." (Compl. at 2.) Further, he does not explain what he told the DHS Defendants about "what is going on here." (Id.) In fact, there is no indication that the DHS Defendants knew about Officer Booker or that Plaintiff had informed them of any conduct by Officer Booker. At best, the Complaint could be read to indicate that Plaintiff told Main and Ryan about the alleged assault by Booker and that they failed to act. Nothing in the Complaint, however, indicates that either DHS Defendant knew about the risk of assault before it happened, nor that Officer Booker presented an excessive risk to inmate health or safety. Thus, Plaintiff fails to properly allege a due process violation as to the DHS Defendants. Rather than granting the DHS Defendants' motion for qualified immunity, the Court simply finds that the claims against the DHS Defendants are dismissed pursuant to Fed. R. Civ. P 12(b)(6).

### B.     *Respondeat Superior*

Next, the DOC Defendants – Lagana, Hayman, and Chavers – move for dismissal on the ground that the claims against them implicate their conduct in supervisory roles rather than any personal involvement. Liability under Section 1983 cannot be predicated solely on the operation of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, a Plaintiff must show a defendant's personal involvement, through "allegations of personal direction or of actual knowledge and acquiescence." Id.

Absent direct involvement, a plaintiff can hold a supervisor liable for failure to train or supervise if the supervisor has shown deliberate indifference to the plight of the person involved.[6] Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). In order for a supervisory official to be held liable for a subordinate's constitutional tort, the official must either be the moving force behind the constitutional violation or exhibit deliberate indifference to the plight of the person deprived." Pair v. Danberg, No. 08-458, 2008 WL 4570537 at *2 (D.Del. Oct. 14, 2008) (internal quotations and citations omitted). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of the potential for this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

---

[6] DOC Defendants acknowledge that Plaintiff has raised a failure to supervise claim, noting that: "[o]ther than alleging that defendants Lagana and Hayman failed to properly supervise their subordinates, Aruanno has not alleged or suggested any such personal involvement." (Defs. Mot. at 23.)

### 1. Lagana and Hayman

Plaintiff claims that Defendant Lagana had "direct involvement in this case" by "fail[ing] to properly supervise or instruct staff before this incident, during the entire period [Aruanno] was in lock-up , as well as after [Aruanno's] release." (Compl. at 2.) And Aruanno similarly alleges that Defendant Hayman "failed to properly train and failed to supervise the actions of the defendants." (Id.) After Plaintiff informed Hayman of "events taking place," Hayman "only forwarded it to the Ombudsman who also did nothing." (Id.)

These scarce allegations are not nearly enough to withstand a motion to dismiss. Plaintiff does not identify facts supporting any of the four elements of supervisory liability based upon a failure to train. Rather, the vague and conclusory allegations relied upon by Plaintiff simply state a legal conclusion – that Hayman and Lagana failed to train and supervise. Without more, Plaintiff's claims cannot withstand a motion to dismiss. Even under a reading of the facts most favorable to Plaintiff, neither Lagana or Hayman can be said to have demonstrated "deliberate indifference" to Plaintiff's plight. At best, Aruanno's claim is one for vicarious liability premised upon Lagana and Hayman's supervisory roles, one that is plainly barred by Rode. Thus, the motion to dismiss as to Lagana and Hayman is granted.

### 2. Investigator Chavers

Investigator Chavers also moves to dismiss the Complaint on the ground that it is based on her role in a supervisory capacity. The only allegations Aruanno makes against Chavers are that she "conspired to cover this up [by] refusing to act" and that she did not proceed with Aruanno's Complaint because of a lack of witnesses, a fact that Aruanno disputes. (Compl. at 1.) While this allegation does not implicate Chavers in a supervisory role, it also fails to state a claim

of any sort.  Plaintiff fails to provide the Court with the names of the other members of the conspiracy and fails to identify any constitutional violation caused by Chavers.  "Conclusory allegations of conspiracy and unconstitutional intent . . . will not survive a motion to dismiss." Biase v. Kaplan, 852 F.Supp 268, 288 (D.N.J. 1994).  Thus, the motion to dismiss as to Investigator Chavers is granted.

### C. Sovereign Immunity

Finally, all Defendants move to dismiss Aruanno's Complaint against them in their official capacities pursuant to the Eleventh Amendment to the United States Constitution. Nowhere in the Complaint does Plaintiff reference any Defendant in his or her official capacity. This argument is denied as moot.

### IV. Leave to Amend

In the Third Circuit, a court must grant leave to amend – even if it is not requested – before dismissing a civil rights complaint that is facially deficient, unless doing so would be inequitable or futile.  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251-53 (3d Cir. 2007).  Even though the Supreme Court struck down the heightened pleading requirement in civil rights cases, Leatherman v. Tarrant Cty Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Third Circuit has continued to abide by the proposition that *sua sponte* leave to amend must be given in civil rights cases.  Fletcher-Harlee, 482 F.3d at 252.

Thus, in following the Fletcher-Harlee guidance and in an abundance of caution, this Court dismisses the above-referenced Defendants *without prejudice*.  Plaintiff shall have 20 days in which to file an Amended Complaint.  Failure to file an amended complaint within that time

period will result in dismissal with prejudice against all Defendants except Booker.

**V.     Conclusion**

      For the reasons set forth above, Defendants' motion to dismiss is **GRANTED** without prejudice**.**  Plaintiff has **20 days** in which to file an amended complaint to cure the pleading deficiencies that plague his initial submission.  Failure to do so will result in dismissal with prejudice.

      An appropriate Order accompanies this Opinion.


Dated: November 21, 2008                                          /s/ Jose L. Linares
                                                                  United States District Judge